August 7, 2019

The Honorable Jacqueline Scott Corley
United States Magistrate Judge

Re:  *Fairbairn et al. v. Fidelity Investments Charitable Gift Fund,* No. 3:18-cv-4881
     Joint Discovery Letter Brief Regarding WATT Stock Loan Transactions

Dear Judge Corley:

Pursuant to Your Honor's March 7, 2019 Civil Standing Order, the parties in the above-captioned action hereby respectfully submit the enclosed 5-page joint statement regarding a discovery dispute, and 10 pages of supporting declarations and documentation.

Sincerely,

*/s/ Thomas Rubinsky*
*Attorney for Plaintiffs*
EMILY and MALCOLM FAIRBAIRN

*/s/ Nick Purcell*
*Attorney for Defendant*
FIDELITY INVESTMENT CHARITABLE GIFT FUND

**Plaintiffs' Position**

Fidelity refuses to produce a wide swath of documents related to its liquidation of the WATT stock donated by the Fairbairns. A significant number of the WATT shares that the Fairbairns wanted to donate were out on loan as of December 26, 2017, and it was thus necessary for the custodians of those shares—Fidelity and Morgan Stanley—to retrieve them before they could be transferred to Fidelity Charitable. Despite Plaintiffs' request for "[a]ll DOCUMENTS RELATING to ENERGOUS stock,"[1] Fidelity continues to withhold (among other things) documents related to the lending and recall of the Fairbairns' WATT shares. Fidelity claims that it has already produced all responsive materials. Halpern Decl. ¶ 2. That is impossible.

We ask the Court to order Fidelity to try again. Fidelity should be required to conduct a good-faith search for documents relating to the lending and recall of the Fairbairns' WATT shares from December 26, 2017 through December 29, 2017. These documents bear on Fidelity's defenses that Mr. Fairbairn's lending of WATT was somehow improper, *see* Halpern Decl. ¶ 3, and that he "waited" too long to recall the shares, *id.* ¶ 4.

Fidelity contends that documentation of the loans will not bear on the propriety of the plaintiffs' stock lending activity, yet it is Fidelity who raised that very issue. It cannot now withhold the core facts showing the loans, their timing and their size. Without that information, it is impossible to determine the loans' impact on the market or on Fidelity's decisions to make the trades in a particular time or manner. (Notably, Fidelity never disputed the documents' relevance in the meet-and-confer correspondence, raising that purported objection only in the final telephone conference.)

The parties are at an impasse because Fidelity claims to have produced "all documents regarding WATT" and asserts that it "did not withhold documents regarding this issue." Halpern Decl. ¶ 2. Yet none of the Fidelity entities has produced *any* operational documents, nor have they produced complete correspondence reflecting the loans and recall of shares in WATT. *Id.* ¶ 5. To illustrate:

- On December 26, 2017, Bruce Chanenchuk of Fidelity Capital Markets ("FCM") told Dan Hooper of Fidelity Family Office Services ("FFOS") that FCM would begin to recall the Fairbairns' shares of WATT the following morning. Halpern Decl. ¶ 6. In the morning, Luigi Audia from FCM updated Mr. Hooper, "We are working on it." *Id.* ¶ 7. But Fidelity has not produced any emails, chats, or other communications among Mr. Chanenchuk, Mr. Audia, or anyone else recalling the shares. *Id.* ¶ 5. Fidelity did *something* to recall the shares, and Plaintiffs are entitled to see whatever that was.

---

[1] Request for Production No. 5 to Fidelity Charitable seeks, "All DOCUMENTS RELATING to ENERGOUS stock, including DOCUMENTS RELATING to YOUR positions, the positions of FIDELITY ENTITIES, or the positions of F-Prime Capital Partners, including without limitation short or long positions, in ENERGOUS stock." Halpern Decl. ¶ 9. Plaintiffs propounded the same request verbatim to FMR, LLC, Fidelity Brokerage Services LLC, and National Financial Services LLC as Subpoena Request No. 6. *Id.*

- On December 28, 2017, Mr. Audia updated Christian Fernandez of FFOS about the status of the recall: "We are awaiting the shares to be returned from the counterparties we have these on loan with." Halpern Decl. ¶ 8. But Fidelity has not produced any communications with counterparties who had borrowed the Fairbairns' WATT shares. *Id.* ¶ 5. Again, Fidelity must have done *something* to tell its counterparties that it wanted their shares back, and Plaintiffs are entitled to see whatever it did.

- Also on December 28, 2017, Alex Stanko of Prime Services updated Mr. Fernandez and Luigi Audia about the number of shares that had been returned to various accounts. Halpern Decl. ¶ 10. *See also id.* ¶ 11 (later update). But Fidelity has not produced whatever document(s) Mr. Stanko consulted to provide that information. *Id.* ¶ 5.

- That evening, Mr. Audia promised Mr. Hooper that his team "will do our best to try to get as many [shares of WATT] as we can returned tomorrow." Halpern Decl. ¶ 12. Yet again, Fidelity has not produced any documents showing whatever it was that Mr. Audia and his team did to try to get the shares back. *Id.* ¶ 5.

- Early the next morning, Mr. Kunz reminded Mr. Audia of the time crunch to "get the shares lent to MS and transferred back" to Fidelity. Halpern Decl. ¶ 13. Later that day, Mr. Hooper asked Mr. Audia to confirm receipt of paperwork from Mr. Fairbairn and confirm that 60,000 shares "are out to MS." *Id.* ¶ 14. Yet Fidelity has not produced notes, emails, or messages between the Fidelity securities lending team and anyone at Morgan Stanley. *Id.* ¶ 5.

- After the close of trading on December 29, 2017, Mr. Fernandez asked Samantha Schumacher to help him "reopen and move the WATT shares." Halpern Decl. ¶ 15. Fidelity has not explained or produced documents describing which donated WATT shares were moved after the close of business on December 29. *Id.* ¶ 5.

And so on. The pattern is clear: Fidelity's productions are somehow missing the critical documents that show when Fidelity had the Fairbairns' shares of WATT stock in its possession.[2] Indeed, that such documents exist is obvious not only as a matter of common sense, but also industry practice.

---

[2] Fidelity complains that locating these documents would requiring searching documents for additional custodians, citing the parties' exchange of custodian lists earlier in the discovery period. Plaintiffs had no way to know which Fidelity individuals were custodians of critical documents in this case—that's why it was Fidelity's job to figure that out in the first instance. Federal Rule of Civil Procedure 26(a)(1). Indeed, as document review and depositions have progressed, it has become clear that an astonishing number of people at various Fidelity business units have relevant documents and information regarding the donation, the WATT shares, and the aftermath. Documents relating to the loan and recall of the Fairbairns' WATT shares are plainly responsive to plaintiffs' document requests for documents related to WATT. It has become clear that (1) Fidelity did not search for or produce operational documents related to the recalled shares; and (2) Fidelity is now focused on the stock lending as a potential issue or defense in the case. Accordingly, the Court should require Fidelity Charitable to produce those documents.

2

According to Plaintiffs' experts, Fidelity likely maintains detailed records of its stock loans, including some with timestamps showing when it receives shares after calling them back. Halpern Decl. ¶ 17. Yet Fidelity has produced no records relating to the loans themselves at all. *Id.* ¶ 5. None of the items identified in Fidelity's letter brief actually document the loan transactions.

**Defendant's Position**

Fact discovery closed on July 31, 2019. Yet on July 26, five days before the close of fact discovery, Plaintiffs sought to relitigate long ago settled responses and productions in response to six month old document requests, seeking additional documents and ESI related to the loan and recall of Plaintiffs' shares of the Energous Corporation ("WATT"). This, despite Fidelity Charitable's confirmation that it has produced all relevant, non-privileged documents and ESI on that subject from *more than two dozen* agreed-upon custodians. Plaintiffs' request is in equal parts belated and baseless; it should be denied.

Through this letter, Plaintiffs are seeking additional documents related to the loan and recall of WATT shares from December 26 through 29, 2017. In seeking this information, Plaintiffs claim it is responsive to the following document request, served on January 11, 2019:

> All DOCUMENTS RELATING to ENERGOUS stock, including DOCUMENTS RELATING to YOUR positions, the positions of FIDELITY ENTITIES, or the positions of FPrime Capital Partners, including without limitation short or long positions, in ENERGOUS stock.[3]

Fidelity Charitable objected on the grounds of overbreadth, but agreed to produce certain responsive, non-privileged documents from December 27, 2017 to January 2, 2018. *See* Def.'s Ltr. Br. re: FCM's other WATT Trades, filed concurrently with this letter brief. On January 22, Fidelity Charitable provided the names and custodians from whom it had or was in the process of collecting ESI. In response to the parties' meet and confers, Fidelity Charitable confirmed that additional responsive documents were retrieved through investigation and targeted searches of the previously disclosed custodians' ESI, focused on locating documents Plaintiffs indicated they sought. Ex. 1, Casamassima email to Asay (Apr. 4, 2019) (excerpt). Then, on April 12, 2019, Fidelity Charitable provided a detailed chart to Plaintiffs that specified the search terms and the custodians to whom those terms had been applied. Ex. 2, Casamassima email to Asay & Pathak

---

[3] This is the very same request that Plaintiffs invoke in support of their demand for documents about trading in WATT having nothing to do with the Fairbairns or Fidelity Charitable. *See* Def.'s Ltr. Br. re: FCM's other WATT Trades. While there is no dispute that the request seeks *those* documents, Fidelity Charitable strongly disagrees with the notion that this request should be read to seek documents related to WATT shares loaned by the Fairbairns, which would not represent any "position" of Fidelity Charitable or the Fidelity Entities. At any rate, Fidelity Charitable's *response* to this request made clear that it did not consider documents relating to the loan and recall of the Fairbairns' stock within the ambit of the request. *See* Def.'s Ltr. Br. re: FCM's other WATT Trades.

(Apr. 12, 2019); Ex. 3, Custodian Chart (excerpt).  Plaintiffs have never identified or asserted any deficiency with either Fidelity Charitable's custodians or search terms.

Fidelity Charitable began producing documents on March 14, and its productions (totaling more than 43,000 pages) included myriad documents relating to the loan and recall of the WATT shares that were donated to the Fairbairns' Fidelity Charitable giving account.  For example, Fidelity Charitable produced email confirmations describing the times at which tranches of WATT shares were returned from loan, the number of shares returned at those times, and the number of shares remaining on loan.  *See, e.g.*, Ex. 5.  Fidelity Charitable produced emails and chats from the individuals involved in Fidelity Charitable's receipt of the donated shares that provide documentation of every aspect of the donation process as it happened in real time, including documents reflecting the time at which each tranche of WATT shares arrived at Fidelity Capital Markets to be sold.

In demanding *more*, <u>Plaintiffs have failed to explain coherently why additional documents relating to the loan and recall of Plaintiffs' WATT shares bear on any issue whatsoever</u>.  Plaintiffs claim that they now need these documents because counsel for Fidelity Charitable asked questions of the Fairbairns at their recent depositions relating to their decision to loan WATT shares.  But one thing has nothing to do with the other.  Fidelity Charitable secured from Ms. Fairbairn the admission that by loaning out shares of WATT stock she controlled, the Fairbairns were allowing short sellers to bet against WATT.  Ex. 4, E. Fairbairn Tr. at 238:10-13.[4]  But the Fairbairns' decision to simultaneously *support* Energous and allow short-sellers to bet against Energous—which allowed them to profit no matter how WATT fared—has absolutely nothing to do with the "operational documents" they are now demanding.  Likewise, if Plaintiffs are seeking these documents to advance a new theory that Fidelity Charitable should have sold the WATT shares that were lent out sooner, it is directly contrary to their allegations that Fidelity Charitable should have waited until 2018 to liquidate—they can't have it both ways.

Plaintiffs' imprecision in their request is telling.  While complaining that Fidelity Charitable's productions contain a lack of "critical" "operational documents," Plaintiffs fail to articulate exactly what documents they seek, let alone why they matter.  It is insufficient simply to state that Fidelity must have done "something," and they wish to now investigate what that "something" was.  Moreover, Plaintiffs never once requested these "critical" documents during discovery, and never pointed Fidelity Charitable to the communications they now claim are incomplete until they served their letter brief.  Plaintiffs may not rely on overbroad, vague requests like "all documents relating to Energous stock," fail to timely articulate what documents they feel are missing, and then request additional documents after discovery has closed.  Nor can Plaintiffs justify their delay—***every document cited in Plaintiffs' letter brief was produced on March 29***.  Ex. 6.

---

[4] They kept this activity a secret from WATT CEO Stephen Rizzone, who believed that Ms. Fairbairn was a "trusted advisor" to his company.  Ex. 4, Rizzone Dep. Tr. at 18:22-19:6, 82:5-15.

While Plaintiffs contend that Fidelity Charitable should be required "to conduct a good-faith search for documents," they offer no reason to believe that Fidelity Charitable has withheld from production a single document in the possession of any of the agreed-upon custodians. It simply has not. To now satisfy Plaintiffs' new requests, Fidelity Charitable would have to consider new custodians and run an entirely new ESI review and production process after the close of fact discovery.

In sum, Plaintiffs are seeking additional documents they did not ask for during discovery, despite Fidelity Charitable's confirmation that no such documents exist in the possession of the agreed-upon custodians. They ask this Court for permission to in essence propound a new discovery request, even though fact discovery has expired, in pursuit of information that fundamentally is not relevant. Fidelity Charitable therefore requests this Court deny Plaintiffs' request.

## ATTORNEY ATTESTATION

I, Thomas Rubinsky, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 7, 2019         */s/ Thomas Rubinsky*
                                                    Thomas Rubinsky