United States District Court
Northern District of California

*[Signature: Jacqueline Scott Corly]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY FAIRBAIRN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIDELITY INVESTMENTS CHARITABLE GIFT FUND, <br><br> Defendant. | Case No. 18-cv-04881-JSC <br><br> **ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 134, 136 |

Emily and Malcolm Fairbairn sue Fidelity Investments Charitable Gift Fund ("Fidelity Charitable") alleging contract and tort claims arising from the Fairbairns' 2017 donation of Energous shares to Fidelity Charitable through a donor advised fund ("DAF"). The parties' motions for summary judgment are now pending before the Court.[1] (Dkt. Nos. 134, 136.) Having considered the parties' briefs and having had the benefit of oral argument on February 20, 2020, the Court DENIES Fidelity's motion for partial summary judgment and GRANTS the Fairbairns' motion on certain of Fidelity's affirmative defenses.

## DISCUSSION

### I. Fidelity Charitable's Motion for Summary Judgment

Fidelity Charitable moves for summary judgment on all of the Fairbairns' claims except their negligence claim. All of the remaining claims—breach of contract, misrepresentation, estoppel, and the UCL—are premised on the Fairbairns' contention that Fidelity Charitable made four legally enforceable promises:

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 & 18.)

- Fidelity Charitable would employ sophisticated state-of-the-art methods for liquidating large blocks of stock,
- Fidelity Charitable would not trade more than 10 percent of the daily trading volume of Energous shares,
- Fidelity Charitable would not liquidate any shares until the new year, and
- Fidelity Charitable would allow the Fairbairns to advise on a price limit; that is, a price below which Fidelity Charitable would not liquidate the Energous shares.

Fidelity Charitable argues summary judgment is warranted because (1) the Fairbairns are estopped from pursuing any claims based on the first three promises, and (2) the first and last promises are too indefinite to support any claim as a matter of law.

### A. Tax Estoppel/Doctrine of Inconsistency

Fidelity Charitable has not proved that the Fairbairns' representation on their 2017 federal tax return that their donation of Energous stock to Fidelity Charitable is tax deductible clearly contradicts their contention that Fidelity Charitable made the asserted legally-enforceable promises. To put it another way, Fidelity Charitable has not established as a matter of law that the Fairbairns' donation with the alleged conditions means that Fidelity Charitable did not acquire exclusive legal control of the donation as required by the tax code. *See* 26 U.S.C. § 170(f)(18)(B) (providing that an individual can claim a tax deduction for a DAF contribution "if the taxpayer obtains a contemporaneous written acknowledgment … from the sponsoring organization (as so defined) of such donor advised fund that such organization ***has exclusive legal control*** over the assets contributed") (emphasis added).

First, the Fairbairns' misrepresentation claim is that Fidelity Charitable induced them to donate their shares by falsely promising that it would it would employ state-the-art share liquidation methods, not trade more than 10% of the Energous daily trading volume, and not trade any shares until the new year. In other words, even if, as Fidelity Charitable claims, a legally-enforceable promise would mean the donation did not qualify as a tax deductible DAF donation, the misrepresentation claim does not require Fidelity Charitable to have made a promise that the Fairbairns could sue to enforce; instead, the misrepresentation claim is based on Fidelity Charitable falsely promising that it was making a legally-enforceable promise.

2

Second, the cases Fidelity Charitable cites do not establish that if a sponsoring organization promises to handle a future donation in a particular way that means that the sponsoring organization, here Fidelity Charitable, does not retain exclusive legal control within the meaning of the tax code. In *Fund for Anonymous Gifts v. I.R.S.*, No. CIV 95-1629 RCL, 1997 WL 198108 (D.D.C. Apr. 15, 1997), vacated in part, 194 F.3d 173 (D.C. Cir. 1999), for example, the trial court held that the purported DAF fund was not entitled to tax-exempt status because under its agreement with the anonymous donors, the fund was "bound by any enforceable conditions *subsequent* which a donor places on his donation." *Id.* at *4 (emphasis added). That is, the fund was required to honor donor requests made *after* the donation as part of the charity's explicit investment purpose. *Id.* Indeed, the D.C. Circuit described the district court's decision to disallow charity tax exempt status as being based "solely on the ground that the Fund's governing instrument permitted donors to place conditions *subsequent* on their donations." 194 F.3d 173 at *1 (emphasis added). The D.C. Circuit vacated the district court's decision because the Fund was willing "to amend its governing instrument to strike out the provision authorizing conditions *subsequent* on donations to the Fund." *Id.* (emphasis added); *see also New Dynamics Found. v. United States*, 70 Fed. Cl. 782, 803 (2006) (denying tax exempt status to an organization because its DAF donors "did not truly relinquish ownership and control over the donated funds and property. Rather, they were allowed to treat [the organization] as a conduit for accomplishing the twin tax avoidance goals of building up their assets tax-free and then siphoning off the accumulated wealth to pay for personal expenditures"). The Fairbairns placed the alleged conditions at issue here prior to or at the time of their donation, not subsequent to their donation.

At oral argument Fidelity Charitable relied heavily on *Styles v. Friends of Figi*, 373 P.3d 965 (2011), a Nevada Supreme Court unpublished decision. *Styles*, however—apart from being noncitable, *see* Nev. R. App. Pro. 36(c)(3) (a party may cite a Nevada Supreme Court unpublished decision *issued after January 1, 2016*)—does not involve a promise made to induce a donation; instead, following a bench trial the court found that the plaintiff had made an "unrestricted" gift to the defendant charity, and that the gift specifically allowed the charity to reject any donor recommendations as to the donation's use. The court's emphasis on the unrestricted nature of the

3

gift contradicts Fidelity Charitable's assertion that *Styles*, as this case, involved a gift with conditions.

The agency and legislative material Fidelity Charitable cites likewise do not distinguish between a legally-enforceable promise made at the time of the donation versus a legally-enforceable promise to abide by a donor's directions given after a donation. *See* The Joint Committee on Taxation, Pension Protection Act of 2006, Title XII: Provisions Relating to Exempt Organizations, 2006 WL 4791686; www.treasury.gov/resource-center/tax-policy/Documents/Report-Donor-Advised-Funds-2011.pdf, at p. 2. Fidelity Charitable fares no better with the other charitable donation cases it cites. *See Goldstein (Joel H., Elaine P.) v. Comm'r of Internal Revenue*, 89 T.C. 535, 541-42 (1987) (case did not involve any pre or post donation conditions); *Gookin v. United States*, 707 F. Supp. 1156, 1158 (N.D. Cal. 1988) (donor maintained control of donation by paying his personal expenses from the charity); *Fakiris v. Comm'r of Internal Revenue,* 113 T.C.M. (CCH) 1555, 2017 WL 2805207, at *25 (T.C. 2017)(donor retained the right to require donee to transfer property to a different charity).

Fidelity Charitable's reliance on the Fairbairns' response to a Request for Admission is not persuasive. Fidelity Charitable asked the Fairbairns to admit that they "retained control" of the donated shares. In response, the Fairbairns admitted they only retained advisory rights and that Fidelity Charitable had legal control. Fidelity Charitable contends that the Fairbairns' admission that Fidelity Charitable had legal control means they have admitted that Fidelity Charitable did not induce them to donate their shares through the unfulfilled promises. But "legal control" was not defined at the time of the response by the Fairbairns or Fidelity Charitable. According to the Fairbairns, legal control in the context of their response meant that once the donation was made, Fidelity Charitable alone controlled the donation, subject to any promises it made prior to the donation. In any event, requests for admission seeking legal conclusions are generally not permitted. *See Taylor v. Cty. of Calaveras*, No. 1:18-CV-00760-BAM, 2019 WL 6341131, at *4 (E.D. Cal. Nov. 27, 2019) (collecting cases). To the extent that Fidelity viewed the Fairbairns' response as in some way unclear regarding what "legal control" meant, Fidelity Charitable could have "move[d] to determine the sufficiency of an answer or objection," *see* Fed. R. Civ. P.

4

36(a)(6), but it cannot instead hold the Fairbairns to having made an admission regarding their lack of legal control as the term is defined in the tax code when that term was not defined in the request for admission itself or the response. *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) ("A party requesting an admission may, if he feels these requirements have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted.").

Because the Fairbairns' charitable tax deduction is not clearly inconsistent with their assertion that Fidelity Charitable is bound by its alleged promises, the "tax estoppel" cases on which Fidelity Charitable relies are distinguishable. In *Carpet Supermarket, Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. CV 09-4951 GAF (CWX), 2009 WL 10675718, at *1-2 (C.D. Cal. Sept. 17, 2009), the plaintiff was estopped seeking indemnification under its insurance policy's employee dishonesty endorsement because it previously designated the at-issue employee as a non-employee for tax purposes and the definition of employee under the policy was narrower than the Internal Revenue Service definition of employee. Similarly, in *Marks v. Am. Airlines, Inc.*, 313 Fed.Appx. 933 (9th Cir. 2009), the plaintiff was estopped from contending he was a California resident and therefore able to bring a claim under California law because for years he avoided California income tax by claiming to be a Florida resident, indisputably irreconcilable positions. *Id.* at *1. As explained above, no such clear inconsistency is present here. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 995 (9th Cir. 2012) (holding that judicial estoppel generally requires "clearly inconsistent" positions).

Further, both *Carpet Supermarket* and *Marks* relied on of *Estate of Ashman v. C.I.R.*, 231 F.3d 541 (9th Cir. 2000). There, the Ninth Circuit held that the duty of consistency requires "(1) [a] representation or report by the taxpayer; (2) on which the Commission[er] has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner." *Id.* at 545. *Estate of Ashram's* "statute of limitations" factor suggests that if a party's representation to the IRS is inconsistent with a position taken in a later proceeding, the appropriate approach is for the IRS to pursue the taxpayer, which it can do only if the statute of limitations has not run.

5

The statute of limitations has not run on the Fairbairns' 2017 tax return. *See Shields v. United States,* 136 Fed. Cl. 37, 50 (2018) (three-year statute of limitations). (Dkt. No. 133-10, Marcus Decl. Ex. L (filing extension granted until 10/15/18).) Thus, if the Fairbairns prove that Fidelity Charitable made the legally-enforceable promises, and Fidelity Charitable is correct that such legally-enforceable promises disqualify the donation from a charitable tax deduction, the IRS may take action against the Fairbairns to recover any improper deduction. No "taxpayer estoppel" is needed to prevent any unfairness: Fidelity would be held to its promises, and the Fairbairns would suffer the consequences, if any, of enforcing those promises.

### B. Definiteness of the Promises

Next, Fidelity Charitable insists that the first and fourth promises are not sufficiently definite under California law as a matter of law. The Court disagrees.

As for the promise that Fidelity Charitable would use sophisticated state-of-the-art methods for liquidating large blocks of stock, drawing all reasonable inferences in the Fairbairns' favor, based on Mr. Fairbairn's testimony a reasonable trier of fact could find that Fidelity Charitable made the promise alleged in the complaint, language that a reasonable trier of fact could also find sufficiently definite.

Fidelity Charitable has also not proved that its alleged promise to allow the Fairbairns to advise on a price limit is unenforceable as a matter of law. Performance on the promise is objectively measurable—did Fidelity Charitable ask the Fairbairns' opinion on the sale price before the trades were made? Fidelity Charitable's suggestion that damages for this specific claim are too speculative is also unpersuasive. Based on the evidence in the record, there is a genuine dispute as to whether Fidelity Charitable would have followed the Fairbairns' advice had it been sought.

\*\*\*

For the above reasons, Fidelity Charitable's motion for summary judgment is DENIED.

## II. Fidelity Charitable's Affirmative Defenses

Plaintiffs move for summary judgment on three of Fidelity Charitable's affirmative defenses: (1) estoppel; (2) waiver; and (3) unclean hands. Viewing the evidence in the light most

6

favorable to Fidelity Charitable, the Court grants the Fairbairns' summary judgment on Fidelity Charitable's waiver and estoppel defenses for the reasons explained in denying Fidelity Charitable's motion for summary judgment. Drawing all reasonable inferences in Fidelity Charitable's favor, the Court nonetheless declines to apply estoppel or waiver. *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996) (noting that estoppel is an "equitable doctrine invoked by a court at its direction"); *Keller v. Fed. Ins. Co.*, 765 F. App'x 271, 273 (9th Cir. 2019) (waiver and estoppel are reviewed for an abuse of discretion). The Court is not ruling that Fidelity Charitable may not make a tax consequence argument to the jury; instead, the Court will not bar the Fairbairns' claims from getting to the jury based on estoppel/waiver.

Fidelity Charitable's unclean hands affirmative defense fares no better. "Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries. The focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue." *Jade Fashion & Co. v. Harkham Indus., Inc.*, 229 Cal. App. 4th 635, 653 (2014) (internal citation and quotation marks omitted). "Not every wrongful act constitutes unclean hands." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999), as modified on denial of reh'g (Jan. 3, 2000). Further, "[t]he misconduct must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." *Id.* (internal quotations marks omitted and citation omitted).

Fidelity Charitable contends that Emily Fairbairn behaved inequitably when she donated the shares while in possession of material non-public information regarding Michael Leabman—the founder and Chief Technology Officer of Energous—who planned to step down from his leadership role once FCC approval was obtained.[2] At oral argument, Fidelity Charitable insisted that when Ms. Fairbairn recalled the Energous shares following FCC approval, she knew the shares were "pregnant with an imminent and precipitous stock decline" and she shifted the risk to

---

[2] This was the only theory of unclean hands advanced by Fidelity Charitable at oral argument. The Court thus deems the other theories abandoned. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

7

Fidelity Charitable that the stock price would plummet. Fidelity Charitable insists that whether Ms. Fairbairn acted inequitably in doing so is a question of fact for the jury.

The Fairbairns contend that it is not a jury question where—as here—Fidelity Charitable has failed to offer evidence that Ms. Fairbairn had any knowledge as to when Mr. Leabman planned to step down that factored into her decision to recall the shares at the end of December. They insist that the more plausible explanation is that she recalled the shares when she did because she wanted to obtain the maximum tax deduction and charitable contribution through the DAF. Indeed, the only evidence regarding Ms. Fairbairn's alleged insider knowledge Fidelity Charitable identifies is Emily Fairbairn's text messages (1) in November 2017, stating that Energous' CEO Stephen Rizzone should delay Mr. Leabman's departure to avoid potential market share loss (Dkt. No. 167-11), and (2) in January 2018, stating that she had fought to delay Mr. Leabman's exit until after the FCC approval (Dkt. No. 167-13). Viewing these facts in the light most favorable to Fidelity Charitable, these messages do not support an inference that Ms. Fairbairn had insider information regarding the *actual* date of Mr. Leabman's departure such that she "manipulated the stock price" by recalling the shares at the end of December 2017 as Fidelity Charitable suggests.

Even if Fidelity Charitable had identified evidence sufficient to support an inference that Ms. Fairbairn's conduct was in some way illegal, Fidelity Charitable has failed to show it was prejudiced as a result of her alleged misconduct. Assuming Ms. Fairbairn sought to liquidate the shares before Mr. Leabman left the company, such conduct would not leave Fidelity "holding the bag" on reduced value Energous shares. The Court is not persuaded by Fidelity Charitable's suggestion that the unclean hands defense does not require a showing of prejudice to the defendant. Despite precedential authority holding that prejudice is a required component of the unclean hands defense, *see, e.g.*, *Kendall-Jackson Winery*, 76 Cal. App. 4th at 979; *Jade Fashion*, 229 Cal. App. 4th at 653, Fidelity Charitable insists that because other cases did not include a discussion of prejudice, it is not a requirement. *See Adler v. Fed. Republic of Nigeria,* 219 F.3d 869, 877-78 (9th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Aug. 17, 2000); *POM Wonderful LLC v. Coca Cola Co*., 166 F. Supp. 3d 1085, 1091 (C.D. Cal. 2016); *Unilogic, Inc. v. Burroughs Corp*., 10 Cal. App. 4th 612, 621 (1992), These cases' lack of discussion of

prejudice does not mean that prejudice is not a required factor, it just means that the courts there found other factors dispositive. Indeed, *Unilogic*, upon which Fidelity Charitable relies heavily, predated *Kendall-Jackson Winery*, and its discussion of prejudice. Further, *Alder* and *Pom Wonderful* are inapposite. *See e.g.*, *Alder*, 219 F.3d at 877-78 (finding that the court did not abuse its discretion in rejecting the unclean hands defense because both parties appeared equally blameworthy and the party asserting the unclean hands defense had knowingly participated in paying illegal bribes for the illegal contracts*); POM Wonderful*, 166 F. Supp. 3d at 1091 (considering whether unclean hands was a defense to a Lanham Act infringement suit under federal law, not under California law.). Nor does *Estates of Collins & Flowers*, 205 Cal. App. 4th 1238, 1250-51 (2012), persuade the court that Fidelity Charitable can invoke the unclean hands defense based on the theory that the Fairbairns' conduct increased the risk to the investing public. *Estate of Collin & Flowers* merely held that unclean hands barred a party in a quiet title action from taking advantage of a forged deed when he was aware of the forgery. Not close to the evidence in this case.

Accordingly, summary judgment is granted in the Fairbairns' favor on the unclean hand defense.

## CONCLUSION

For the reasons stated above, Fidelity Charitable's motion for summary judgment is DENIED. Plaintiffs' motion for summary judgment is GRANTED.

This Order disposes of Docket Nos. 134 and 136.

**IT IS SO ORDERED.**

Dated: March 2, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge