1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   EMILY FAIRBAIRN, et al.,                Case No.  18-cv-04881-JSC
                    Plaintiffs,
8
            v.
9                                           ORDER FOLLOWING PRETRIAL
                                            CONFERENCE
10  FIDELITY INVESTMENTS
    CHARITABLE GIFT FUND,
11
                    Defendant.
12

13
           The Court held a pretrial conference on October 1 and October 2, 2020.  This Order
14
    records the rulings and logistics set forth on the record at the hearing.
15
    I.      MOTIONS IN LIMINE
16
         A. Plaintiffs' Motions
17
            1. MIL No. 1: Motion Re: Individuals' Status as Agents/Employees (Dkt. No. 209)
18
           Plaintiffs seek an order that the Fidelity Management & Research (FMR) employees who
19
    solicited Plaintiffs' donation, liquidated the stock, and dealt with the aftermath were all acting as
20
    agents or employees of Fidelity Charitable (who does not employee anyone itself) for purposes of
21
    Federal Rule of Evidence 801(d)(2)(D).  In light of Fidelity's concession in its opposition that
22
    many of these persons were acting as Fidelity Charitable's agent in certain contexts, the Court
23
    declines to enter a blanket ruling at this time.  However, at trial it will be Fidelity's burden to raise
24
    the issue as to any particular out-of-court statement.  Since the parties are identifying each witness
25
    they are calling and the exhibits they intend to offer with that witness four days in advance of the
26
    testimony of the witness, Fidelity Charitable shall advise Plaintiffs two days in advance of the
27
    witness's testimony that it intends to object to admission of a particular statement on hearsay
28

United States District Court
Northern District of California

1  grounds. (Dkt. No. 191 at 4.)

2  **2.   MIL No. 2: Motion to Exclude Benjamin Pierce (Dkt. No. 210)**

3  Plaintiffs move to exclude Fidelity's expert Benjamin Pierce on the grounds that his

4  opinions are not the proper subject of expert testimony.  Mr. Pierce is the founding President of

5  the Vanguard Charitable Endowment Program and a leader of a group that developed a set of

6  common operating standards for donor advised funds (DAFs).

7  Under Rule 702(a), an expert's testimony must be based on "scientific, technical, or other

8  specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a

9  fact in issue." "Expert opinion testimony is relevant if the knowledge underlying it has a valid

10  connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting

11  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)); *Kumho Tire Co. v.*

12  *Carmichael*, 526 U.S. 137, 150 (1999) ("[T]he relevant reliability concerns may focus upon

13  personal knowledge or experience" of the expert).

14  Mr. Pierce may testify as to his own experience with liquidating DAF donations at

15  Vanguard.  He may also testify as to what other DAFs publicly say as to their liquidation policies.

16  Plaintiffs' objections are fodder for cross examination.  Mr. Pierce may testify as to why Vanguard

17  adopted whatever policy it did as to the liquidation of donated stock, but he will not be allowed to

18  testify as to whether what other DAFs do is "appropriate."  Mr. Pierce's testimony as to the

19  relationship between Fidelity Charitable and Fidelity FMR is excluded as irrelevant and not

20  helpful.  Any tax or legal testimony is excluded as beyond Mr. Pierce's expertise, unhelpful and,

21  in many respects, irrelevant for the reasons the Court previously articulated.  In so ruling the Court

22  does not intend to allow Mr. Pierce to testify to anything that was not disclosed in his expert

23  report.

24  **3. MIL No. 3: Price-Limit Promise (Dkt. No. 214)**

25  In their motion, Plaintiffs represent that:

26  Plaintiffs intend to go to trial on the price-limit promise as alleged in
the complaint and as this Court described at summary judgment:

27  'Fidelity Charitable would allow the Fairbairns to advise on a price
limit; that is, a price below which Fidelity Charitable would not

28  liquidate the Energous shares.' MSJ Order, ECF No. 171 at 2.

1

2

> Plaintiffs did not intend to alter the meaning of that promise by describing it as a promise 'that Fidelity would keep Malcolm Fairbairn in the loop and allow him to advise on the liquidation, including price.' JPTO, ECF No. 191 at 2.

3    (Dkt. No. 214 at 2:16-21.)  Plaintiffs clarify that their assertion that Defendant promised to "keep

4    them in the loop" is not a separate promise, but inherent in the promise to advise on a price limit;

5    that is, they would have to be kept in the loop in order to advise on a price limit.  Given Plaintiffs'

6    representation, this motion is a non-issue and no relief is needed.

7        **B.  Fidelity's Motions**

8        **1.  MIL No. 1: Motion to Exclude Evidence and Argument Re: PNZ Liquidation**

9            **(Dkt. No. 205)**

10        Fidelity moves to exclude any evidence or argument regarding the liquidation of the PNZ

11    shares as irrelevant, prejudicial, and because it will prolong the trial.  The motion is DENIED.

12    Fidelity's arguments all go to the weight the Court should give the evidence and since this is a

13    bench trial there no risk of prejudice. Fidelity mistakenly argues that this evidence has no

14    probative value to the jury and that there is a likelihood of juror confusion, but both are non-issues

15    in this bench trial.  *See United States v. De Anda*, No. 18-CR-00538-TSH-1, 2019 WL 2863602, at

16    *4 (N.D. Cal. July 2, 2019) (finding Rule 403 inapplicable to bench trials and collecting cases re:

17    same).

18        **2.  MIL No. 2: Motion to Exclude Evidence of Financial Payments (Dkt. No. 206)**

19        Fidelity moves to exclude evidence or argument regarding financial payments made by

20    Fidelity Charitable to other Fidelity entities as well as evidence of compensation of individual

21    employees.  At oral argument, Plaintiffs agreed not to offer evidence of any bonuses received

22    unless and until such bonus becomes relevant to a hearsay objection.  In addition, Fidelity clarified

23    that it does not object to "evidence of the contractual or operational relationship between Fidelity

24    Charitable and other entities or even the financial relationship between them."  (Dkt. No. 224 at

25    18.)  However, it does object to evidence as to the particular dollar amounts as irrelevant.

26        Plaintiffs shall not offer or mention any dollar amounts in open court unless the amounts

27    are already publicly disclosed and available.  The Court will decide in context if any of the offered

28    evidence is relevant to a claim or defense in the lawsuit.

United States District Court
Northern District of California

### 3. MIL No. 3: Motion to Exclude Plaintiffs' Expert Professor Galle (Dkt. No. 207)

Fidelity moves to exclude portions of Plaintiffs' Expert Professor Galle's opinion. Professor Galle is a tax professor at Georgetown University Law Center.  Professor Galle submitted two reports and Fidelity has moved to exclude portions of his second report offered in rebuttal to Mr. Pierce's opinion.  In particular, Fidelity seek to exclude paragraphs 7-11, 17, and 24-32, which directly rebut portions of Mr. Pierce's report regarding (1) donor influence over DAFs (¶¶ 7-11, 25-26); (2) paragraph 17 which states "In sum, the allegation in the Complaint that Fidelity Charitable sought and agreed to follow plaintiffs' preferences with respect to the timing of liquidation of WATT stock is consistent with industry practices and long-standing charity law"; and (3) the portions of the report which discuss Mr. Pierce's opinions regarding the rapid liquidation.

Professor Galle will be allowed to rebut whatever testimony is allowed as to Mr. Pierce. His legal and tax opinions, however, are excluded as not relevant or helpful.  He will be allowed to testify as to what other DAFs publicly say as to how they handle donations, just as Mr. Pierce is allowed to so testify.

### 4. MIL No. 4: Motion to Preclude Testimony of Dr. Harris (Dkt. No. 208)

Fidelity moves to exclude testimony from Dr. Harris regarding the impact of Fidelity's trading on the price of WATT shares as unreliable.

In determining whether expert testimony is admissible, the trial court acts as a gatekeeper and "must ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). However, "the *Daubert* gatekeeping obligation is less pressing in connection with a bench trial," because "the 'gatekeeper' and the trier of fact [are] one and the same." *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999); *see also FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial."). Ultimately, courts "are entitled to broad discretion when discharging their gatekeeping function." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

United States District Court
Northern District of California

1    Fidelity does not contend that Dr. Harris, the former Chief Economist for the Securities

2   and Exchange Commission, is unqualified.  Nor does it challenge his opinion that Fidelity's

3   actions caused the price of WATT shares to fall.   Instead, Fidelity maintains that his reasoning

4   with respect to the WATT share pricing is unreliable in two respects: (1) his high/low estimates

5   for the WATT share prices absent Fidelity's trades, and (2) his estimate that the overall price

6   impact was .50¢/1000-share price.  Plaintiffs counter that Fidelity mischaracterizes Dr. Harris'

7   methodology and that the Court should assess his methodology and credibility at trial on a full

8   record.

9    Generally, an expert's "assumptions" "and his failure to account for other costs and

10   contingencies—go to the probative weight, rather than the admissibility, of the evidence and were

11   properly the subjects of '[v]igorous cross-examination, presentation of contrary evidence, and

12   careful instruction on the burden of proof.'" *United States v. Hirokawa*, 342 F. App'x 242, 246

13   (9th Cir. 2009) (quoting *Daubert*, 509 U.S. at 596).  So too here.  It is not that Dr. Harris fails to

14   offer any methodology for this pricing of the WATT shares, just that Fidelity does not believe that

15   the methodology is good enough and that it is ends driven rather than driven by mathematics.  To

16   the extent that Fidelity contends that Dr. Harris's rationale is unpersuasive or flawed, that point

17   can be tested through cross-examination and presentation of contrary testimony.

18    Likewise, Fidelity's contention that Dr. Harris's price impact analysis lacks statistical

19   significance goes to the weight of this evidence rather than its admissibility. *See In re High-Tech*

20   *Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *15 (N.D. Cal. Apr. 4,

21   2014).  Fidelity can cross-examine Dr. Harris on his explanation and the Court will weigh the

22   evidence.

23    **5.  MIL No. 5: Plaintiffs' Request for Damages to the DAF (Dkt. No. 216)**

24    Fidelity moves to preclude Plaintiffs from pursuing a claim for damages to the DAF fund.

25   As discussed at the pretrial conference, Plaintiffs may submit a supplemental brief, not to exceed

26   five pages, on or before October 9, 2020, and Defendant may submit a response, again not to

27   exceed five pages, on or before October 16, 2020.  The Court will take the matter under

28   submission at that time.

United States District Court
Northern District of California

## II.    TRIAL LOGISTICS

A.  Trial by Zoom Webinar will commence on Monday, October 19 and will continue on October 20, 21, 23, 26, 27, and 28 as needed.  Trial will run from 8:30 a.m. to approximately 1:30 p.m. (depending on where we are with a witness) with two approximately 20-minute breaks.

B.  The Court will hold a trial practice run at 9:00 a.m. on Thursday, October 15, 2020 via the Zoom webinar link.  The plan is that for any event (opening statements, witness testimony, etc.) only the speaking participants will be viewable on the screen.  The Court, the Courtroom Deputy, and the Court Reporter will also be viewable, although at the practice session we will explore having the Court Reporter, and perhaps the Courtroom Deputy, as hidden non-video participants so they do not "take up" a square on the screen even if their video is off, but they can be heard if needed.  At the practice session, the parties shall be prepared to practice screen sharing and offering of exhibits, among other things. The parties are welcome to have any IT consultants involved in the practice session.  The Court's Director of IT, Buz Rico, will be joining the session at 9:30 a.m.

C.  Each side is limited to 14 hours of direct and cross-examination. This will not include any time spent adjudicating Fed. R. of Evid. 801(d)(2) objections.  Direct testimony offered by declaration will be debited two minutes per page.

D.  The Court assumes the parties will begin the trial with opening statements and should exchange any demonstratives they intend to offer during openings by 5:00 p.m. three days before the first day of trial.[1]  Any objections to demonstratives shall be made two days prior to the first day of trial.  The parties shall meet and confer the following day and raise any unresolved issues with the Court October 19 prior to the start of trial.  This same process applies to any exhibits the parties intend to use in their opening statements.

---

[1] For purposes of this Order, any reference to time refers to Pacific Time, and any reference to a day refers to a calendar, not court day.

E.  The parties shall exchange a list of witnesses for each trial day that a party intends to call—together with the exhibits and demonstratives that will be used during direct examination (other than for impeachment of an adverse witness)—at 5:00 p.m. four days before that trial day. At 5:00 p.m. two days before the anticipated day of testimony, counsel will provide objections to the exhibits and demonstratives that were disclosed for use on direct, together with a list of all exhibits and demonstratives to be used with the same witness on cross examination (other than for impeachment). Counsel will then meet and confer telephonically regarding unresolved objections to the exhibits for that witness. To the extent any objections to exhibits remain unresolved, the parties will present those to the Court prior to the witness's testimony.

F.  To the extent that any party seeks to present a witness's direct examination by declaration, the party shall serve the declaration on the opposing party seven days before the first day of trial.  The opposing party must raise any objections to the declaration testimony by 5:00 p.m. three days before the first day of trial and the parties shall meet and confer to attempt to resolve the objections.  If they are unable to do so, the objections shall be set forth on the declaration in an agreed upon format prior to its submission to the Court.  The declaration must be lodged with Court electronically and in paper form by noon the day before the party seeks to offer the testimony.

G.  To the extent that any party seeks to offer testimony by deposition, the parties will identify witnesses expected to testify by deposition at 5:00 p.m. four days before the day during which that deposition testimony is expected to be played or proffered in court. At the same time, the calling party will advise the opposing party (i) whether the deposition video will be played during the trial and (ii) whether the calling party will proffer all previously designated testimony for that witness (including all identified exhibits), and if not, which portions of testimony the calling party intends to proffer. The parties will meet and confer to address previously disclosed objections to

testimony and exhibits. If good faith efforts to resolve the objections fail, the objecting party will raise the objections with the Court before the testimony is played.

H.  For purposes of the trial, the parties shall make the exhibits available through a cloud platform in witness specific binders as previously discussed.  At the close of evidence on the liability phase, the parties shall submit two (2) binders of the exhibits that were actually admitted to the Court in hardcopy.

I.  Fidelity has designated Pamela Norley as its party representative.  Ms. Norley and the Fairbairns are permitted to observe any portion of the trial.  All other witnesses are prohibited from observing, reading, watching, or discussing any other witnesses' testimony in advance of their own testimony.

J.  The Court welcomes any additional suggestions by the parties.

**IT IS SO ORDERED.**

Dated: October 7, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge