Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

EMILY FAIRBAIRN and MALCOLM      )
FAIRBAIRN,                       )
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )   **NO. C 18-04881 JSC**
                                 )
FIDELITY INVESTMENTS             )
CHARITABLE GIFT FUND,            )
                                 )
          Defendant.             )
_____)

San Francisco, California
Wednesday, September 16, 2020

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING**

**OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**9:00 A.M. - 9:23 A.M. = 23 MINUTES**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                    STRIS & MAHER LLP
                    28 Elm Street, Second Floor
                    Montpelier, Vermont 05602
               BY:  **BRIDGET ASAY, ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


TRANSCRIBED BY:  ANA M. DUB, CSR NO. 7445
                 RMR, RDR, CRR, CCRR, CRG, CCG

```
 1   APPEARANCES VIA ZOOM:   (CONTINUED)

 2   For Plaintiffs:

 3                          STRIS & MAHER LLP
                            725 South Figueroa Street, Suite 1830
 4                          Los Angeles, California 90017
                     BY:   PETER K. STRIS, ATTORNEY AT LAW
 5                         ELIZABETH R. BRANNEN, ATTORNEY AT LAW
                           RACHANA A. PATHAK, ATTORNEY AT LAW
 6                         THOMAS RUBINSKY, ATTORNEY AT LAW

 7   For Defendant:

 8                          WILMERHALE LLP
                            350 South Grand Avenue, Suite 2100
 9                          Los Angeles, California 90071
                     BY:   DAVID C. MARCUS, ATTORNEY AT LAW
10                         CHRISTOPHER CASAMASSIMA, ATTORNEY AT LAW
                           SARAH R. FRAZIER, ATTORNEY AT LAW
11                         ANDREW S. DULBERG, ATTORNEY AT LAW

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | <u>**Wednesday - September 16, 2020**</u>                               <u>**9:00 a.m.**</u> |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Court is now in session. |
| 5 | Calling Civil Action C-18-4881, Fairbairn versus Fidelity |
| 6 | Investments. |
| 7 | Counsel, starting with plaintiff, can you please state |
| 8 | your appearance. |
| 9 | **MS. ASAY:**  Yes.  This is Bridget Asay for plaintiffs. |
| 10 | And we have Peter Stris, Elizabeth Brannen, Radha Pathak, and |
| 11 | Thomas Rubinsky. |
| 12 | **THE COURT:**  All right.  Good morning. |
| 13 | **MS. ASAY:**  Good morning. |
| 14 | **MR. MARCUS:**  Good morning, Your Honor.  For Fidelity, |
| 15 | I'm David Marcus.  With me is Chris Casamassima, Sarah Frazier, |
| 16 | and Andrew Dulberg. |
| 17 | **THE COURT:**  All right.  Good morning. |
| 18 | Okay.  So we're to talk about our brave new trial |
| 19 | scheduled for next month. |
| 20 | I did confirm -- we had a judge's meeting -- it will have |
| 21 | to be a remote bench trial. |
| 22 | The days that I have set aside were the last two weeks of |
| 23 | October, starting with the 19th.  My preference would be to be |
| 24 | dark on Thursday, the 22nd and 29th.  That's when I do my |
| 25 | hearings in my other cases. |

1          Normally, for a bench trial, I go 8:30 to 2:30 or 3:00 --

2     that's Pacific Standard Time.  I know some of you may be in a

3     different time zone -- with a morning break around 10:00 a.m.;

4     usually a 45-minute lunch break -- but we can do 30 minutes

5     because that's usually because people have to go somewhere to

6     get their lurch; nobody has to go anywhere -- about a 30-minute

7     lunch break around noon; then another 15-minute afternoon

8     break.  Because it's a bench trial, we have more flexibility.

9          But I haven't done a Zoom trial yet; so I don't know how

10    that schedule will work.  I know when I do settlement

11    conferences that run all day, that can be somewhat exhausting.

12    But anyway, that's generally what I would do.  And I know some

13    of you may also have other people running around your house or

14    things that we may need to adjust for as well, all of which is

15    completely fine.

16         We have our pretrial on October 1st.  I'll just tell you,

17    I do intend to set time limits.  Plaintiffs' witness list is

18    way too long.  You're going to need to cull it down.

19         What I was thinking to do -- and Judge Chen actually did a

20    virtual bench trial, fairly complex case involving the EPA, in

21    June.  And actually, let me give you that case number.  It is

22    17-2162.  You may want to speak to the parties about how that

23    went.  He's who I'm consulting with.

24         But in that case, some direct testimony came in by

25    declaration; and so for the time limits, he certainly assigned

1   a certain amount of time per page.

2        And so each side would have the same amount of time, and

3   just, we would assign a certain amount of time per page.   I

4   don't know what that is yet.   I'll address that at the pretrial

5   conference.   So, one thing.

6        Then the other thing is sort of the document -- exhibit

7   list is enormously long as well.   What I think -- I talked this

8   over with my law clerk.   I don't want any hard copies of

9   anything until after the trial because, no doubt, the actual

10  exhibits admitted will be a small portion of that list, and so

11  then I can get just one binder with the admitted documents

12  only.

13       In advance of trial, of course, I think the way to do it

14  is through Dropbox, or Box.com is what they used in

15  Judge Chen's case.   I don't have a preference.   Just as long as

16  you share it with me and I can share it with my clerk and with

17  Ms. Means as well.   And then it was just as if it was a binder,

18  but digitally, with all the exhibits in order, usually

19  plaintiffs and then defendants.

20       But then, in addition, what they did -- and I think would

21  be helpful for everyone here -- is they created separate

22  witness folders.   And each witness folder were the exhibits the

23  party intended to use.   Obviously, something may come up and we

24  have to get another exhibit.   But that way, for that witness

25  for that day, we'll have a file with all that witness's planned

1    exhibits, plus the deposition transcript in case that's used

2    for impeachment or refreshing recollection or whatever.  We'll

3    all have it in a file, digital file right there that we can get

4    to.  So that's how I would suggest we do it that way.

5         And then, during the trial, you just share screen.  At

6    this point, it would be up on the Elmo, or however it would be.

7    We can share screen.

8         But what I plan to do is, at least with certain important

9    documents, put them on my hard drive on another computer so I

10   can pull them up and look at them separate from the sharing

11   screen.  Sometimes we have bandwidth issues or things like

12   that.

13        And the other thing, in terms of who are we going to see.

14   Of course, this is a trial and it will be public.  Normally,

15   our public trials, not that many people are interested and

16   there's only a handful of people in the courtroom.  This will

17   be open to, actually, the entire world.  I have no idea how

18   many people will be watching, but it will be public.  It will

19   be a webinar.

20        But the screen, I think the best way to do it is for

21   witnesses, you'll see the witness, the lawyer asking the

22   questions, one -- right? -- each side can designate only one,

23   and the lawyer who would be defending the witness, and me so

24   that the screen would only have four people on it.  I don't

25   even think the court reporter we need to see, although we need

1    to hear the court reporter in case she asks you to repeat

2    something or speak more clearly.

3         And then, of course, what I would encourage people to do

4    is put it on "Speaker" view so that you see whoever is speaking

5    at that time.  That's what I'll have.  I'll have "Speaker" view

6    and then thumbnails on the side of the other person.  If

7    somebody objects, they'll be the big face that I see.

8         One thing, in talking to Judge Chen, he actually said he

9    preferred this format because the witness or the person

10   speaking, you can see them directly up front.  And if you think

11   about it, in a trial, the witness is always to our side and

12   we're looking at them this way, even in a bench trial.  This

13   way, they're talking directly to us.  So prepare your witnesses

14   for that.

15        So I think those were some of the main questions that you

16   had in terms of format and things like that.  I'd encourage

17   you --

18        Oh, the other thing is, I don't know that we know who our

19   court reporters are.  As soon as we figure that out, Ms. Means

20   will provide you their names.  And I know for Judge Chen's

21   trial, they were able to provide realtime.  And so he had, and

22   I believe I will have as well, an iPad that had a realtime

23   transcription going at the same time, and you should be able to

24   do that as well.  There's an app.  I can't tell you -- you'll

25   have to contact the court reporter about that.  So we should be

1   able to have all that right there.

2       So any questions about any of that?  Again, at the

3   pretrial conference, we'll sort of finalize that, but just to

4   give you an idea.

5       The other thing, of course, we would do a practice session

6   the week before as well so everyone can practice, see what they

7   look like, make sure you share screens.  It's a bench trial; so

8   it's not quite as critical as if it was a virtual jury trial,

9   which we are not yet doing, although we may have to but we're

10  not there yet.

11      And so then the other things you raised were a couple --

12  some issues that I think we'll have to address at the pretrial

13  conference.  I want you to tee them up.

14      One is with respect to the damages and whether the

15  plaintiffs can recover -- as I understand it, they're seeking

16  to sort of make the Fidelity account whole or something like

17  that.  And there's, of course, a big question as to whether

18  they have any standing to seek that relief.  I think that

19  should be presented to me as a motion in limine brought by

20  Fidelity -- right? -- seeking to exclude plaintiff from

21  obtaining or seeking those damages.

22      The other issue is whether plaintiffs will be held to the

23  representations or the misrepresentations alleged in the

24  pleadings all the way through summary judgment.  I think where

25  we stand right now is, what was all the way through summary

1    judgment and I even ruled on a couple of those and whether they

2    were sufficient in the evidence, those are the

3    misrepresentations that we're going to trial on.  If plaintiff

4    believes there's cause to amend or something, then I think that

5    needs to be plaintiffs' motion and should also be presented to

6    me to be heard on October 1st.

7         As I understand it, with respect to the daily trading

8    limit, it may not be a dispute as to what the representation

9    was and more a dispute as to what it meant.  That, I don't

10   think -- that doesn't need to be addressed in a motion in

11   limine.  That's just a trial issue, I think.

12        But to the extent the plaintiffs -- and I believe with

13   respect to the in the loop, that wasn't alleged, and that

14   wasn't decided on summary judgment.  That one, I think you need

15   to bring a motion if you want to try to prove a different

16   representation than was really alleged in the pleadings and

17   decided up through summary judgment.  There may be cause or

18   not.  I don't know.  But that would be plaintiffs' burden

19   there.

20        And then, of course, any other issues that you have.

21        So --

22             **MS. ASAY:**  All right.  Your Honor, if I --

23             **THE COURT:**  So --

24             **MS. ASAY:**  Apologize.

25             **THE COURT:**  Oh, go ahead, Ms. Asay.

1          **MS. ASAY:**  I just -- I know that Ms. Brannen and also

2     Mr. Stris were prepared to address some issues today.  And I

3     have some indication that they may be muted in the proceeding.

4     So I just wanted to raise that --

5               **THE COURT:**  Oh, okay.

6          **MS. ASAY:**  -- question now.

7          **THE COURT:**  Where did Ms. Means go?

8          **THE CLERK:**  They can just unmute themself.  I can't --

9     I mean -- okay.

10          **THE COURT:**  Well, Ms. Brannen, yeah, she seems to

11    be --

12          **THE CLERK:**  She's unmuted.  She's not on mute.  She

13    needs to do something.

14     Sorry.  You want to call in?

15          **MR. STRIS:**  Well, am I on mute as well?

16          **THE CLERK:**  No.

17          **THE COURT:**  No.  We can hear you.

18          **MR. STRIS:**  Oh.  So, Your Honor --

19          **THE CLERK:**  So something's wrong with her.

20          **MR. STRIS:**  So while -- while Beth is trying to sort

21    that out, if I could just quickly clarify.

22     So with regard to the 10 percent promise, I understand

23    your point.

24     With regard to price limit, I don't know if this is the

25    appropriate time or later, but I want to make sure I

1   understand.  The promise to advise on price limit requires that

2   you be informed what's happening so you can advise.  And there

3   are many paragraphs in our Complaint where we plead that.

4        So do we need to bring some sort of motion, or how do we

5   call to the Court's attention the parts of our pleaing that we

6   believe are consistent with what we've pled and what we intend

7   to bring to trial on that promise?

8        **THE COURT:**  Well, I don't know.  I mean, certainly, in

9   summary judgment, in my orders, whatever, I always identify the

10  representations that were pled.  To the extent those are

11  different from what you think was pled, then I think -- however

12  it's brought to my attention, we need to get that resolved

13  prior to trial.

14       **MR. STRIS:**  Right.  And so my question is:  If we

15  don't believe it's different, if we believe the price limit

16  promise -- if we believe we can point to six paragraphs in the

17  Complaint that are consistent with what we've said all along,

18  how do we get that in front of the Court so that we can just

19  understanded whether there's a belief that we're changing our

20  promise?

21       **THE COURT:**  Yeah.  However you guys want to do it.

22  Maybe it's defendant's -- it doesn't matter.

23       Oh, I should have said at the outset, you have been

24  working incredibly well together and coming up with ways of

25  approaching.  I'm very appreciative of that.  And so I'm

1  confident.

2      However you want to present it to me, I don't know.  And

3  you can decide how to present it to me one way or the other.

4  Maybe I shouldn't -- who has the burden -- whoever it is, just

5  have it presented to me so I can decide it on October 1st.

6          **MR. STRIS:**  Understood.

7          **THE COURT:**  And you guys can come up with whatever you

8  think is the best way to do it, because I don't know the depth

9  of what the argument is on either side.

10         **MR. MARCUS:**  Your Honor, if the other side is done, I

11 have a few issues I wanted to follow up on, but I didn't want

12 to step in front of them.

13         **MR. STRIS:**  I had nothing further.  I don't know if

14 Beth is off of mute or that's been resolved.

15         **MR. MARCUS:**  Sure.

16     So, Your Honor, couple of the details and then a couple of

17 larger issues, although I'll be very brief.

18     First, we had thought about providing witnesses with a

19 binder of hard documents that would be sealed and be sent to

20 them, both cross and direct; and then they'd open it in front

21 of the Court, which might make it easier for them to work with,

22 while we'd all be working with electronic documents.

23     Does the Court have any view on that?

24         **THE COURT:**  Certainly, I don't object to them having

25 the exhibits in front of them.

1          **MR. MARCUS:**  Okay.  So that was one.

2       Second is, with respect to who's going to host the trial,

3     of course we'll follow whatever the Court wants to do.  But we

4     had spoken to a vendor who would host a Zoom trial on their

5     platform and have a dedicated tech person to help us.  Both

6     sides would share the cost of that.  And it just would be

7     helpful because we'd have a dedicated tech person who would be

8     on-site the whole time to work out any issues.

9       I don't know if that's something the Court's interested

10    in.  We've just sort of gotten this proposal from the other

11    side cleared with our client and raised it with plaintiffs just

12    the other day.  So I'm not sure if they'll take a position.

13    But I just wanted to see if that was a good idea in the Court's

14    view or a non-starter.

15         **THE COURT:**  I think it would be a great idea.  I have

16    no idea, for security reasons or the like, whether we can do

17    that.  So what I will do is I will put you in touch with our

18    head of IT and our Clerk of Court.

19       So who should I put in touch with you, Mr. Marcus?

20         **MR. MARCUS:**  I think Mr. Dulberg is perfect for that,

21    Your Honor.

22         **THE COURT:**  Who?

23         **MR. MARCUS:**  Mr. Dulberg.

24         **THE COURT:**  Mr. Dulberg.  Okay.

25         **MR. MARCUS:**  And, Your Honor, just for your reference,

1   this is apparently a security grade Zoom platform.  So it's

2   very high security.  It also -- it doesn't allow the public to

3   get in directly, but it sets up a sort of a separate room so

4   the public can get in and access the trial.

5       So there is public access.  It's just, it's all within

6   their own platform that's very secure.

7           **THE COURT:**  All right.  Yeah.  I can't say one way or

8   the other.  Certainly, if it's okay with our IT and our Clerk

9   of Court, it's okay with me for sure.  I mean, I think that

10  could be very helpful and take a burden off the Court.

11      So I will put Mr. Dulberg in touch with Buzz Rico, is the

12  head of our IT.

13          **MR. DULBERG:**  Thank you, Your Honor.

14          **MR. STRIS:**  And I think --

15          **MR. MARCUS:**  Your Honor --

16          **MR. STRIS:**  Oh, I'm sorry.

17      Just on our end, Your Honor, I think Ms. Brannen would

18  also like to be in touch because --

19          **THE COURT:**  Okay.

20          **MR. STRIS:**  -- you know, we've been working with, you

21  know, David and the team as -- you know, on these issues, and

22  we're talking to our vendor as well.

23      So we'd like to be in the loop.

24          **THE COURT:**  Okay.  Definitely.  All right.  So I will

25  do that.

1          One other -- go ahead.

2               **MR. MARCUS:**  Go ahead, Your Honor.

3               **THE COURT:**  No, no, no.  I was going to change the

4    topic; so go ahead.

5               **MR. MARCUS:**  Well, I was going to change the topic

6    also.  So, of course, judge first.

7               **THE COURT:**  Oh, all right.

8          So the only other thing I was thinking about, in just

9    looking through everything, we have, of course -- there are a

10   lot of -- we have liability issues.  Is it on the fraud claims,

11   on the contract claims, negligence claims, and the like, each

12   of which, depending on my finding, could have different

13   consequences for damages and calculations.  And then we have

14   super complicated damages questions that I assume will be very

15   expert intensive.

16         And one thing no one had proposed, thought about, just

17   given that we're doing this by Zoom in this complicated time,

18   would it make sense to bifurcate the trial and have me decide

19   liability first and then go to damages after I've issued my

20   opinion, my findings of fact and conclusions of law on

21   liability?  At that point, we may be able to be in person,

22   although given what Dr. Fauci said, I wouldn't count on it.

23   But it might make preparing for this video trial a little bit

24   more -- less complicated, a little bit in terms of the time

25   crunch.

1    So here's -- I have those two weeks.  I'm on criminal duty

2  in November.  I can't hold trial in November.  So if we're not

3  able to finish in those two weeks, I wouldn't be able to hold

4  trial again until December.  But I'm positive we could get the

5  liability in in those two weeks for sure.

6    So you don't have to answer me right now, but why don't

7  you guys talk about that afterwards, about whether that's

8  something you want to think about doing.

9    I just think, for me, it would certainly be much less

10 complicated to know I could really grapple and get the opinion

11 out.

12    The thing about bench trials is they're really work

13 intensive for the judges.  And we're going to probably start

14 having a lot more, and some of them we're going to have to get

15 the parties to agree to just get a verdict as if we were a

16 jury.

17    But this case, you wouldn't want that anyway, just because

18 of the complicated issues.  I understand.  And I want to give

19 the parties a thorough opinion, and to separate those, I think,

20 would help simplify it to some extent.

21    So I throw that out there as an option.  I'm not going to

22 require it over your objections because I know you have experts

23 lined up and all that kind of stuff, and I know that's not easy

24 to do either.  But I would be willing to do that if the parties

25 wanted to do that.

1      And I think it could simplify things a bit to start off

2  that way.  Just try liability, get your opinion on liability,

3  and then move to damages in another proceeding.  We don't have

4  the same worry you do with a jury because it's the same fact

5  finder for both.  I'm not going anywhere, I hope.

6          **MR. STRIS:**  Understood.

7      So, Your Honor, I know you didn't ask for our opinion now,

8  but for what it's worth, not only do I think that makes sense;

9  I think at least for me personally, I would prefer that.

10     But what process in terms of us meeting and conferring.

11 Is that something we should talk about and then be prepared to

12 discuss at the pretrial conference?

13         **THE COURT:**  Well, if you could agree -- if you agree,

14 then you should probably do that sooner rather than later,

15 because it's really going to affect your preparation over the

16 next month -- right? -- tremendously.

17         **MR. STRIS:**  Yeah.

18         **THE COURT:**  And you need to let your experts know,

19 that kind of thing.

20     So what if I were to tell the parties, if you could let me

21 know by a week from today.

22         **MR. STRIS:**  Perfect.

23         **THE COURT:**  Mr. Marcus, does that timing work for you?

24         **MR. MARCUS:**  Yeah, I think that's adequate time,

25 Your Honor.  I mean, I think we need to think about it a little

```
 1   bit and think about our experts.  Some of them bear on

 2   liability and damages.  And just, we need to figure that out.

 3            THE COURT:  Well, yeah, yeah.  I mean, so some of them

 4   might have to be -- would be called twice.  But the advantage

 5   is, we don't have any travel costs or hotels or any of that.

 6   So the burden in that sense is -- in terms of them having to be

 7   called again is minimal, I think.

 8            MR. MARCUS:  Yep.  Your Honor, we will get together

 9   with our client and our team and then talk to our opposing

10   counsel and get the Court an answer within a week easily.

11            THE COURT:  Okay.  Great.  By a week from today.

12   All right.

13            MR. MARCUS:  On the -- one other issue I wanted to

14   raise is, on the motion in limine with respect to *Daft* damages,

15   for want of a better term, we will work with the other side on

16   a briefing schedule for the motions in limine so we get the

17   package to the Court in advance of 10/1, I think is the

18   pretrial conference.

19            THE COURT:  Yes.

20            MR. MARCUS:  And I think we are -- I think -- I'm not

21   sure whether we used up all of our available motions in limine;

22   but if we didn't, I'm assuming -- we didn't use them?

23            MR. STRIS:  You have one left.

24            MR. MARCUS:  Fine.  Withdrawn.

25            THE COURT:  That's fine.  Yeah.  And regardless of
```

1  what the parties decide on bifurcation, I'll decide that,

2  because I know that's an important question.  Who knows?  Maybe

3  that could help lead to a resolution one way or the other as

4  well.

5              **MR. MARCUS:**  Right.

6              **THE COURT:**  So I'll decide all motions in limine, even

7  damages-related motions in limine.

8              **MR. MARCUS:**  Very well, Your Honor.

9              **THE COURT:**  Okay.  So --

10             **MS. FRAZIER:**  Your Honor --

11             **THE COURT:**  Yes.

12             **MS. FRAZIER:**  -- if I may, briefly, Sarah Frazier on

13  behalf of the defendants.

14      I believe the parties are currently slated to submit their

15  motions in limine on September 24th.  I don't know if that

16  will -- we'll certainly endeavor to work out a schedule with

17  the other side to brief this *Daft* damages issues.  But if that

18  motion in limine were to come in a couple of days later, would

19  that be a problem for the Court?

20             **THE COURT:**  No.  That's fine.  You can do the other

21  ones.  At least get the other ones decided on -- filed on

22  September 24th.

23             **MS. FRAZIER:**  Absolutely.

24      Okay.  Thank you, Your Honor.

25             **THE COURT:**  All right.  So I'd encourage you to

1   contact -- well, it sounds like you already have a vendor.

2       All right.  So I'm going to e-mail Mr. Rico right after

3   this so that he'll get in touch with Ms. Brannen and

4   Mr. Dulberg about your vendor.

5       I'll hear from you within a week as to whether we should

6   bifurcate liability and damages.

7       And then we'll see you back on October 1st.

8           **MR. MARCUS:**  Thank you very much, Your Honor.

9           **THE COURT:**  All right.  Thank you.

10          **MR. STRIS:**  Thank you.

11          **MR. CASAMASSIMA:**  Thank you, Your Honor.

12              (Proceedings adjourned at 9:23 a.m.)

13                      ---o0o---

14

15

16

17

18

19

20

21

22

23

24

25

1

2                **CERTIFICATE OF TRANSCRIBER**

3

4          I, ANA M. DUB, CSR NO. 7445, RDR, CRR, CCRR, CRG, CCG,

5   certify that the foregoing is a true and correct transcript, to

6   the best of my ability, of the above pages of the official

7   electronic sound recording provided to me by the U.S. District

8   Court, Northern District of California, of the proceedings

9   taken on the date and time previously stated in the above

10  matter.

11          I further certify that I am neither counsel for,

12  related to, nor employed by any of the parties to the action in

13  which this hearing was taken; and, further, that I am not

14  financially nor otherwise interested in the outcome of the

15  action.

16

17  DATE:   Friday, September 18, 2020

18

19

20

21

22  _____

23      Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG

24

25